

F 206.623.7292   F 206.623.0594

Mark S. Carlson
Attorney
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WA 98101
www.hbsslaw.com
Direct (206) 268-9346
Direct Fax (206) 623-0594
markc@hbsslaw.com

October 29, 2020

**VIA CM/ECF**

The Honorable Sallie Kim
United States District Court
Northern District of California
Courtroom C – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *Rearden LLC et al. v. The Walt Disney Company et al.*, No. 17-CV-04006-JST
      *Rearden LLC et al. v. Twentieth Century Fox Film Corporation et al.*, No. 17-CV-04191-JST

Dear Judge Kim:

Pursuant to the Court's order on October 27, 2020 (ECF No. 257), Rearden submits the attached letter brief in support of its motion to strike the Declaration of Darren Hendler.

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Mark Carlson*
      Mark Carlson

*Attorneys for Plaintiffs*

MSC:kcr

SEATTLE   BOSTON   CHICAGO   LOS ANGELES   NEW YORK   PHOENIX   SAN DIEGO   BERKELEY

005073-12/1365994 V2

Rearden LLC and Rearden Mova LLC move to strike the Declaration of Darren Hendler (ECF No. 249-4) and all 52 exhibits, filed after the close of summary judgment discovery. This is <u>not</u> a motion for further discovery under Fed. R. Civ. P. 56(d).

## I.    FACTS

At the August 1, 2018 Case Management Conference, the Court determined that it would require defendants to file their causal nexus summary judgment motion first, and then set a deadline for Rearden to file its Rule 56(d) request for discovery. ECF No. 107 (Tr. 37:1-38:2). The Court stated "<u>*I want to use this as a discovery management mechanism*</u>." *Id.,* 37:18-19.

On December 31, 2018, the Court entered an order requiring defendants to file their causal nexus motion on February 14, 2019, Rearden to identify "the discovery Plaintiffs contend they need to oppose the motion," and the parties to propose a schedule "for completing agreed-upon discovery relating to the motion" or their positions for the Court to resolve. ECF No. 128.

Defendants filed their motion on February 28, 2019. *E.g.,* ECF No. 139. It was supported by eleven substantive declarations, including one from Greg LaSalle, then a DD3 employee. ECF No. 138-10. There was no declaration from DD3's Darren Hendler.

The parties proposed summary judgment discovery based on the February 28 papers, (ECF Nos. 142 and 143), which was adopted by the Court in an order on May 7 (ECF. No. 150).

On September 16, the Court terminated defendants' motion, providing "Defendants are instructed to <u>*refile*</u> the motion when causal nexus discovery has concluded." ECF No. 187.

On March 14, 2020, Rearden informed defendants that it wanted to take the deposition of a previously-unidentified deponent, DD3 employee Darren Hendler, on the ground that a Disney witness had provided new information that required examination on one topic and two or three documents. Defendants opposed the request. But on May 4, the Court granted Rearden leave to depose Mr. Hendler, <u>*limiting the deposition to no more than two hours*</u>. ECF No. 230.

Mr. Hendler was deposed on June 12, 2020. Rearden confined itself to its one topic, and foundational and contextual matters. Rearden's direct examination concluded on page 89 of the transcript after a lunch break, at or very near the two-hour limit imposed by the Court.

Rearden completed summary judgment depositions on June 30, 2020.

On October 14, 2020, defendants refiled their causal nexus summary judgment papers. But they supplemented their refiled papers with a surprise declaration from Darren Hendler. It is 29 pages long, with 114 paragraphs. It incorporates ten "figures," which are stills from *Beauty and the Beast* scenes in various stages of development (before incorporation into the film). It attaches 52 exhibits. The figures and exhibits were not produced in discovery. At no time during or even after summary judgment discovery did defendants ever inform Rearden that they intended to supplement the record with a new declaration and new documents.

## II.     ARGUMENT

Defendants oppose this motion on five grounds.

1.     First, defendants argue that nothing in any of the Court's orders prohibits them from supplementing the record after the close of summary judgment discovery. This argument cannot be reconciled with the summary judgment discovery plan as ordered and administered by the Court. Defendants were ordered to file their motion first, *followed* by Rearden's Rule 56(d) request based on those papers, "*as a discovery management mechanism*." 8/1/18 Tr. at 37:18-19. And when the Court terminated defendants' motion and ordered them to "*refile*" their papers after the close of summary judgment discovery (ECF No. 187), it did not authorize them to supplement their refiled their papers with any other new material they wanted to add to the record. The Court's summary judgment discovery protocols could not function "as a discovery management mechanism" if defendants were free to supplement the record after the close of summary judgment discovery with new declarations and documents that were not produced.

2.     Second, they argue that all of the matters raised in Mr. Hendler's declaration were covered in his Court-ordered deposition. This argument suffers from two false premises.

A first false premise is that Rearden could have examined Mr. Hendler on all 114 paragraphs, ten figures, and 52 exhibits, even though they were not provided in advance of his deposition. But a non-clairvoyant lawyer cannot examine a witness about testimony in an undisclosed declaration and documents she does not have. It is simply not possible.

A second false premise is that Rearden was permitted to examine Hendler on any subject in the event that defendants might submit a declaration from him after discovery closed. But the

Court limited the examination to only two hours, based on Rearden's representation that it would limit the deposition to only one topic and two or three documents. That examination was completed at the two-hour limit on transcript page 89 with two exhibits. It would not have been possible to both complete that examination, and cover 114 declaration paragraphs, ten figures, and 52 additional exhibits within the time-constraint imposed by the Court. Clearly, the Court did not contemplate any examination beyond what we were authorized by the Court to conduct.

And defendants' conclusion, that all of the subject matters in Mr. Hendler's 114 paragraphs, ten figures, and 52 exhibits, were covered (miraculously) in his deposition after all, is equally false. Mr. Hendler concedes that paragraphs 8-114 of his declaration, all ten figures, and all 52 exhibits, "elaborate" on and provide supplemental "examples" to his deposition. ECF No. 249-4 ¶7. And even if it were true that all of the subject matter of Hendler's declaration was somehow adequately covered in his deposition, *then there would be no need for his declaration*. Defendants were free to cite to the deposition transcript in their brief, rather than submitting a new declaration with figures and exhibits that were not produced in discovery. The only reason for the declaration is that it contains material that was *not* covered in the deposition.

3.      Defendants' third argument concerns Hendler's ten figures and 52 exhibits. They argue that Rearden should have obtained them from DD3 in response to its subpoena, and having failed to do so it has only itself to blame. But DD3 took the position that the production files for the films at issue comprised many terabytes of data that were unduly burdensome to produce and not proportional to the needs of the case. Rearden accepted this objection, not knowing that after the close of summary judgment discovery Mr. Hendler would help himself to that very data and cherry-pick examples that he thought would help defendants in the declaration he gave them.

And defendants argue we had the opportunity to depose Mr. Hendler about all 52 exhibits because "Hendler testified at his deposition repeatedly about DD3 having a system for uploading and logging not only MOVA data but all of the other work that was part of the VFX pipeline." But disclosing that DD3 *has* a database does not mean that anything *in* the database is fair game in a deposition and can be offered into evidence after the close of summary judgment discovery.

- 3 -

4.      Defendants' fourth argument is that Mr. Hendler's declaration, all 114 paragraphs, ten figures, and 52 exhibits, are matters that are not subject to dispute.  This too, is not true.  The five-page limit for this brief is insufficient to specify every disputed issue and make it understandable to the Court.  But following are just two examples of many.

The gist of Mr. Hendler's declaration is that MOVA is a *de minimus* and trivial part of a massive CG character animation pipeline that employs "many different software tools besides Mova in the process of developing shots including the Beast." ECF No. 249-4 ¶10.  Those tools include "Autodesk's Maya software … to animate the Beast face to add eyes, tongue and body motion, and to create a more nuanced performance and add back missing motions," and "for facial shot modeling."  Id.   And Maya "was used to create the mask rendering of the tracked mesh output data," citing to Figure 3.  Id., ¶16.  But DisputeSoft's Schulman, the forensic investigator engaged by the Special Master in the SHST case, determined that DD3's Maya (.ma) files contain "significant amounts of [MOVA] source code in them" (9/24/20 Tr. at 49:8-12 (Ex. A)), and the Special Master ruled that Maya files that contain MOVA source code (software) belong to Rearden.  Special Master Order No. 6 (Ex. B).   So MOVA extends much farther into the animation pipeline than Mr. Hendler admits in his declaration, but Rearden could not cross-examine him on that issue because the Beast production files have still not been produced.

And Mr. Hendler states "[o]f the 411 shots of the Beast's face, the animation team took delivery of Mova tracked mesh output data for 227 shots.  Some of the 227 did not actually use the Mova tracked mesh output data." ECF No. 249-4 ¶17.  But how many is "some"?  Why did "some" shots not use MOVA, was it because they were dropped from the film or deemed unimportant?  We would ask which shots *did* use MOVA, to show their importance to the film relative to the others.  And we would want to verify whether 227 is the correct number of Mova shots, or did Mr. Hendler miscount?  227 shots is a lot of MOVA, more than half of the shots of the Beast's face, but Mr. Hendler is trying again to trivialize it compared to the 184 others to support defendants' summary judgment argument.  Rearden would want to cross-examine him.

5.      Finally, defendants argue any prejudice can be remedied by *another* stay of the briefing schedule while Rearden attempts to get a supplemental DD3 document production with

the production files for at least *Beauty and the Beast* and all other documents relevant to his 114 paragraphs of declaration testimony, ten figures, and 52 exhibits, and then re-depose Hendler.

But Rearden has been trying to get documents and files from DD3 pursuant to Court orders and subpoenas for *years*, even to the extent of requiring a Special Master and forensic investigator in the SHST case, and still does not have them. A continuance dependent on DD3 producing documents before re-deposing Mr. Hendler could be indefinite. And much of the discovery Rearden would need is the MOVA production files, terabytes of digital files from a variety of software that would have to be reviewed by a consulting expert before Rearden's counsel could use them in a deposition. This would cause further delay and expense.

And Hendler might not be the only witness Rearden would need to depose. His declaration states that he consulted "DD3's Production Finance team" who determined "that less than 1% of the time [allegedly 170,000 hours] DD3 spent on BATB was related to capturing facial performances using Mova or to processing the resulting output using Mova software." ECF No. 249-4 ¶¶3-4. Rearden cannot cross-examine Mr. Hendler on this testimony without production of the finance documents, and even then, would likely have to depose the member of "DD3's Production Finance team" who collected and provided the information to Hendler.

*But most pertinently*, if as defendants argue, all of Hendler's declaration and exhibits were covered in his deposition, then defendants should have relied on that transcript. That they failed to do so is no reason to permit defendants to supplement the record with a post-discovery surprise declaration. Defendants have no burden to submit evidence as the party moving for summary judgment, so there is no prejudice to them if the Hendler declaration is stricken. It is Rearden's burden to proffer discovered evidence. Every declaration that defendants choose to add to their papers imposes a corresponding further evidentiary burden on Rearden to respond. There is no prejudice to Rearden if it had all the declarations before summary judgment discovery. But 114 paragraphs of declaration testimony, 10 figures, and 52 exhibits produced after discovery closes *is prejudicial*. The solution is simple: if the Hendler deposition transcript is good enough for Rearden, it was good enough for defendants and they should have cited to it rather than supplementing the record after the close of summary judgment discovery.