KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA F. YOUNG (SBN 217533)
blanca.young@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>THE WALT DISNEY COMPANY et al.,<br><br>　　　　Defendants,<br><br>REARDEN LLC et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>TWENTIETH CENTURY FOX FILM CORPORATION et al.,<br><br>　　　　Defendants. | Case Nos.　4:17-cv-04006-JST<br>　　　　　　　4:17-cv-04191-JST<br><br>**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ON CAUSAL NEXUS ISSUE [ECF No. 297/No. 255]**<br><br>Judge:　Hon. Jon S. Tigar |

**NOTICE OF MOTION AND MOTION FOR LEAVE
TO FILE MOTION FOR RECONSIDERATION**

TO THE COURT AND PLAINTIFFS ("REARDEN") AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that all defendants in Case Nos. 4:17-cv-04006-JST and 4:17-cv-04191-JST (collectively, "Defendants"[1]) will and hereby do move pursuant to Civil L.R. 7-9 for an Order granting them leave to file a motion to reconsider portions of the Court's Order Granting in Part and Denying in Part Motion for Summary Judgment on Causal Nexus Issue, ECF No. 297 (the "Order").[2]  Specifically, Defendants respectfully request leave to file a motion for reconsideration insofar as the Order denies summary judgment as to two movies—*Guardians of the Galaxy* and *Deadpool*—because the Order "manifest[ly] fail[ed] … to consider material facts or dispositive legal arguments which were presented to the Court before" it issued the Order. Civil. L.R. 7-9(b)(3).

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants respectfully request leave to file a reconsideration motion regarding the denial of summary judgment on the causal nexus issue as to *Guardians of the Galaxy* and *Deadpool*. Defendants do not seek leave regarding *Beauty and the Beast*.  Defendants recognize that reconsideration is an exceptional remedy, but in this case reconsideration is warranted under Civil L.R. 7-9(b)(3).  The Order cited one piece of evidence specific to *Guardians of the Galaxy* (a draft press release) and one specific to *Deadpool* (a bonus "featurette" on a Blu-ray disc).  *See* Order at 7:4-8, 8:1-4.  Neither of these items of evidence nor anything else in the summary judgment record supported the Order's conclusion that Rearden raised a triable question of there being "a causal nexus between the infringement and the [movies'] gross revenue." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).

---

[1] Defendants in Case No. 4:17-cv-04006-JST are The Walt Disney Company, Walt Disney Motion Pictures Group, Inc., Buena Vista Home Entertainment, Inc., Marvel Studios, LLC, and Mandeville Films, Inc.  Defendants in Case No. 4:17-cv-04191-JST are Twentieth Century Fox Film Corporation and Twentieth Century Fox Home Entertainment LLC.

[2] Docket references in this Motion are to ECF entries in Case No. 4:17-cv-04006-JST.  The same filings appear with different ECF numbers in Case No. 4:17-cv-04191-JST.

The Order held that Rearden raised a triable issue of causal nexus based on four factors:

(1) "[I]t would be reasonable for the jury to infer from Rearden's evidence that Defendants advertised their use of MOVA and used MOVA-based clips in the film trailer in order to drive interest in the films and thereby increase film profits." Order at 10:5-6.

(2) "Rearden has presented evidence to create a dispute of fact as to whether the promotion of MOVA and use of MOVA-based clips in the trailer did result in higher profits." *Id*. at 10:11-13.

(3) "[A]lthough Rearden's evidence that the use of MOVA allowed Defendants to create a more human-like character with whom viewers could empathize is not, standing alone, sufficient to show the causation of profits, the jury can consider whether this fact was emphasized in Defendants' advertising to boost interest or whether it drove trailer views that may have ultimately led to greater profits." *Id*. at 10:18-22.

(4) "Rearden presents some evidence that Defendants increased their profits by eliminating the expense of realizing the same CG character presentation that they would have had to create manually." *Id*. at 11:1-3.

In holding that these factors satisfied Rearden's burden as to *Guardians of the Galaxy* and *Deadpool*, the Order did not consider material facts and dispositive legal arguments that required a different result.

**Guardians of the Galaxy**:  None of the evidence on factors 1-3 applied to this movie. The only evidence the Order cited regarding *Guardians of the Galaxy*, Order at 7:4-8, was, as Defendants explained in their reply, a *draft* press release regarding the casting of an actor to play Thanos, who was on screen for 39 seconds. *See* Defts' Reply (ECF No. 280) at 15:12-13. Rearden presented no evidence that this document (or any other) advertising or promoting MOVA was ever released to the public in connection with *Guardians of the Galaxy*.[3]

---

[3] Aside from the draft press release, the only evidence Rearden submitted regarding *Guardians of the Galaxy* was an online interview of Marvel's CEO, who said that the actor Josh Brolin "was willing *to put the dots on his face* and do the performance." Rearden Opp. (ECF No. 263-4) at 11:23-28 (citing Carlson Decl. Ex. 19 (ECF No. 264-4) at 3 (emphasis added)).  That interview did not refer to "MOVA." And the statement about the actor "put[ting] dots on his face" does not

The Order noted Rearden's argument that internal documents, which were not released to the public, could be relevant to the causal nexus inquiry because they "demonstrate Defendant's desire to tout MOVA as a feature of the films." Order at 6:26-27. But, as the Order's conclusion with respect to the first factor made clear, evidence of internal documents discussing the promotion of MOVA was relevant to the causal nexus inquiry when paired with other evidence showing that Defendants *actually did promote MOVA* in their public marketing materials. The Order concluded: "it would be reasonable for the jury to infer" that "Defendants *advertised their use of MOVA* and *used MOVA-based clips in the film trailer* in order to drive interest in the films and thereby increase film profits." *Id*. at 10:4-6 (emphasis added). The Order did not consider the material fact that Rearden presented no evidence showing that Defendants actually "advertised their use of MOVA" in connection with *Guardians of the Galaxy*, or that Defendants "used MOVA-based clips in the film trailer" for that movie.

Factor 2 focused on "the promotion of MOVA and use of MOVA-based clips in the trailer." *Id*. at 10:11-13. But Rearden did not present any evidence regarding "the promotion of MOVA" or the "use of MOVA-based clips in the trailer" for *Guardians of the Galaxy*. Rearden's expert witness on motion picture trailers, Philip Fier, did not discuss *Guardians of the Galaxy* in his trailer analysis. The only motion picture trailer discussed in Mr. Fier's declaration or any of Rearden's evidence was the trailer for *Beauty and the Beast*. *See id*. at 8:5-26; Fier Decl. (ECF No. 264-10) ¶¶ 19-29.

Factor 3 related to Rearden's claim that it was important to have a "human-like character with whom viewers could empathize." Order at 10:19. Here, too, the only evidence that Rearden submitted in connection with this issue, including in the declaration of its proffered expert, Dr. Angela Tinwell, concerned the Beast in *Beauty and the Beast*. Rearden presented no evidence on the third factor concerning Thanos, the character in issue in *Guardians of the Galaxy*. That

---

describe MOVA's process for facial motion capture. As Rearden has emphasized from the outset of this case, the MOVA process does not put dots on the actor's face but instead covers the face with phosphor-based makeup. Tinwell Decl. (ECF No. 264-16) ¶¶ 68-69. The Court did not cite the interview in the Order.

omission was not surprising, since Thanos is an arch-villain and not a character with whom viewers are meant to empathize.

Factor 4 related to cost savings from the use of MOVA. Here, the Order did not consider Defendants' legally dispositive argument that this factor is not relevant to the causal nexus inquiry. Defendants cited Ninth Circuit authority, *Polar Bear Prods.*, 384 F.3d at 711, and the Copyright Act provision on infringer's profits, 17 U.S.C. § 504(b),[4] in support of their argument that the causal nexus inquiry focuses on the link between the alleged infringement and the defendant's *revenues*, not its costs. See Defts' Reply (ECF No. 280) at 14:26-15:3. The Order did not discuss this argument or explain how it could or should be rejected. The Order did cite a decision from another district court. Order at 11:3-8 (citing *Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, L.P.*, No. 14-cv-3385-GW (PLAX), 2016 WL 5921062 (C.D. Cal. Apr. 1, 2016)). But the court's order in *Charter Sch. Cap.*, like the Order here, did not discuss the legal argument Defendants made here or explain why that argument should be rejected.

The Order also did not consider the material fact that Rearden presented no evidence showing that the use of MOVA actually saved any costs with respect to the production of *Guardians of the Galaxy*. See Defts' Reply (ECF No. 280) at 14:3-5.[5]

In sum, the Order did not consider material facts and dispositive legal arguments that supported granting Defendants' motion as to *Guardians of the Galaxy*.

**Deadpool**: The Order should be reconsidered as to *Deadpool* for many of the same reasons that apply to *Guardians of the Galaxy*. The only difference is that, in the case of *Deadpool*, the single item of evidence the Court considered (and the only *Deadpool*-specific evidence Rearden submitted) was "a promotional featurette for" the movie. Order at 8:1-5. The

---

[4] Section 504(b) of the Copyright Act states: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

[5] Rearden cited evidence relating to Dr. Li's Ph.D. thesis, which did not concern *Guardians of the Galaxy* (or any other movie in suit), and Dr. Tinwell's declaration, which did not discuss *Guardians of the Galaxy* (or *Deadpool*). See Rearden Opp. (ECF No. 263-4) at 19:11-20:2; Tinwell Decl. Ex. 2 (ECF No. 264-18) (materials relied on by Dr. Tinwell).

1  Order said this evidence would allow "the jury to infer … that Defendants advertised their use of
2  MOVA … in order to drive interest in the films and thereby increase film profits." *Id*. at 10:4-6.
3      The Order, however, did not consider material facts showing that the *Deadpool* featurette
4  did not "drive interest" in consumers to pay to see the movie.  As Rearden's motion (and
5  authenticating declaration) made clear, the material in question appeared on a "*Blu-*
6  *ray/DVD/streaming* featurette." Rearden Opp. (ECF No. 263-4) at 13:16 (emphasis added);
7  Dadufalza Decl. (ECF No. 264-8) ¶ 7 (declarant captured video clip from "*Blu-ray version*[] of
8  *Deadpool: From Comics to Screen ... to Screen!*") (emphasis added).  A Blu-ray (or DVD or
9  streaming) featurette is bonus material at the end of a copy of a movie on a disc (or at the end of a
10 streamed performance).  The consumer cannot watch the featurette unless he or she already has
11 paid for the copy of the movie (or the streamed performance).  By definition, such material would
12 not have a causal nexus to the consumer's decision to buy the Blu-ray disc, because the consumer
13 already would have bought the disc before viewing the featurette.
14      Rearden submitted no evidence showing that the Blu-ray featurette drove any consumer's
15 decision to pay to see *Deadpool* in theaters or to buy a copy on a disc.  Nor did Rearden submit
16 any evidence regarding *Deadpool* that would support any of the Order's conclusions as to
17 anything else in factors 1-3 (promotional material preceding a purchase; the trailer for the movie;
18 the audience empathizing with the character).
19      The Order's conclusion with respect to factor 4 did not consider dispositive legal
20 arguments and material facts, as discussed above.
21      For the foregoing reasons, Defendants respectfully submit they have established cause
22 under Civil L.R. 7-9(b)(3) to be granted leave to file a motion for reconsideration and for the
23 Court to reconsider its denial of summary judgment as to *Guardians of the Galaxy* and *Deadpool*.

DATED: August 25, 2021

MUNGER, TOLLES & OLSON LLP

By: _/s/ Kelly M. Klaus_
      KELLY M. KLAUS

*Attorneys for Defendants*