UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REARDEN LLC, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>  Defendants. | **ORDER GRANTING MOTIONS FOR RECONSIDERATION**<br><br>Case No. 17-cv-04006-JST<br>Re: ECF No. 300 |
| REARDEN LLC, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>TWENTIETH CENTURY FOX FILM CORPORATION, et al.,<br><br>  Defendants. | Case No. 17-cv-04191<br>Re: ECF No. 257 |

Before the Court are Defendants' motions for reconsideration in *Rearden LLC v. The Walt Disney Co.*, Case No. 17-cv-04006 (N.D. Cal.) and *Rearden LLC v. Twentieth Century Fox Film Corp.*, Case No. 17-cv-04191 (N.D. Cal.). ECF No. 300 (Case No. 17-cv-04006-JST); ECF No. 257 (Case No. 17-cv-04191). Defendants seek partial reconsideration of the Court's August 17, 2021, summary judgment order. ECF No. 297.[1] The Court will grant the motions.

**I.   BACKGROUND**

The factual and procedural background of this case is summarized in the Court's prior orders addressing Defendants' motions to dismiss and motions for summary judgment. ECF Nos. 60, 85, 297. Plaintiffs Rearden LLC and Rearden Mova LLC ("Rearden") bring this case against Defendants alleging copyright, trademark, and patent infringement claims based on the alleged use

---

[1] For the remainder of this order, the Court uses the docket numbers from *Rearden v. The Walt Disney Co.*, Case No. 17-cv-04006. Identical copies of the declarations, briefs, and other related materials were filed on the docket in *Rearden v. Twentieth Century Fox Film Corp.*, Case No. 17-cv-04191.

of Rearden's MOVA Contour Reality Capture Program ("MOVA Contour" or "MOVA") in the production of Defendants' major motion picture films. ECF No. 1.

Defendants previously moved for summary judgment on the issue of causal nexus, alleging that Rearden could not show the required causal nexus between Defendants' alleged infringement and the profits from their films under 17 U.S.C. § 504(b). ECF No. 249. The Court granted the motion as to the films *Terminator: Genisys*, *Avengers: Age of Ultron*, *Night at the Museum: Secret of the Tomb,* and *Fantastic Four*, but denied it as to the films *Beauty and the Beast*, *Guardians of the Galaxy*, and *Deadpool*. ECF No. 297.

Now before the Court is Defendants' motion for reconsideration regarding the Court's order denying summary judgment as to *Guardians of the Galaxy* and *Deadpool*. ECF No. 300.[2] Rearden filed an opposition to the motion, ECF No. 301, and Defendants replied, ECF No. 302.

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 7-9, which states,

> (a) before the entry of a judgment adjudicating all of the claims and the rights and liabilities of all parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil L.R. 7-9(b). No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion.

Defendants bring the motion under Local Rule 7-9(b)(3), alleging "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."

## IV. DISCUSSION

Defendants' motion centers on Rearden's claims concerning Defendants' "indirect profits," which "arise when the alleged infringer does not sell the copyrighted work itself but rather uses the copyrighted work to sell another product." *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d 1044, 1049 n.5 (S.D. Cal. 2007) (citing *Andreas v. Volkswagen of America, Inc.*,

---

[2] Defendants do not challenge the grant of summary judgment as to *Beauty and the Beast*.

2

336 F.3d 789 (8th Cir. 2003)).  Defendants allege that Rearden cannot show a causal nexus between any alleged infringement and Defendants' profits.

In the Ninth Circuit, "to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement."  *Mackie v. Rieser*, 296 F.3d 909, 916-17 (9th Cir. 2002).  The question here is whether Rearden provided "sufficient non-speculative evidence" to create a triable issue of fact regarding a causal link between the alleged MOVA infringement and profits generated by the movies *Guardians of the Galaxy* and *Deadpool*.

Two Ninth Circuit cases illustrate "what suffice[s] to establish a causal connection between copyright infringement and an infringer's indirect profits."  *Griffo v. Oculus VR, Inc.*, No. SA CV 15-1228-DOC (MRWx), 2018 WL 6265067, at *10 (C.D. Cal. Sep. 18, 2018) (citing *Mackie*, *supra*, and *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004)).  In *Mackie*, plaintiff Mackie created a series of sidewalk installations in Seattle depicting the basic steps of various popular dances.  296 F.3d at 911-12.  He sued the Seattle Symphony Orchestra Public Benefit Corporation for copyright infringement, alleging that it had used an image from his installation in its "Pops" promotional materials.  *Id.* at 912.  Following discovery, the Symphony moved for partial summary judgment on Mackie's claim for the Symphony's indirect profits.  *Id.* at 913.  The district court granted summary judgment, and the Ninth Circuit affirmed.  *Id.* at 916.  The court held that a plaintiff seeking to recover indirect profit damages for copyright infringement "must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as the result of the infringement," and that Mackie had failed to offer such evidence.  *Id.* at 911.  Notably, the plaintiff's own expert stated that "he could not 'understand' how it would be possible to establish a causal link between the Symphony's infringing use of 'The Tango' and any Pops series revenues generated through the inclusion of the collage in the direct-mail literature."  *Id*. at 916.  The Ninth Circuit observed that many factors could have contributed to an individual's decision to subscribe to the Symphony, and that "in the absence of concrete evidence," Mackie's attempt to attribute a patron's decision to subscribe to the

3

1  use of his copyrighted image was speculative. *Id.*

2  In *Polar Bear*, defendant Timex paid plaintiff Polar Bear Productions to make a
3  whitewater kayaking movie called "PaddleQuest," showing equipment bearing the Timex logo,
4  which movie Timex then had the right to use in its promotional materials for a period of one year.
5  384 F.3d at 703-04.  When Timex used footage from the movie after the one-year mark, Polar
6  Bear sued. *Id.*  The evidence showed that Timex used the movie at its trade shows; in a
7  promotional campaign for the soft drink Mountain Dew; and in videos used to train salespeople at
8  a large national retailer. *Id.* at 704.  The jury awarded Polar Bear $2,415,00.00 in actual damages
9  and $2.1 million in indirect profits related to Timex's infringements. *Id.* at 705.  On appeal, the
10 Ninth Circuit found a sufficient nexus between Timex's profits and its use of the copyrighted
11 images at trade shows and in the Mountain Dew campaign. *Id.* at 712-13.  First, the film footage
12 was used at twelve different trade shows and an expert testified that 10-25 percent of the sales at
13 the trade shows resulted from the excitement created by the booth promotion of which the
14 infringing materials were a substantial part. *Id.* at 712.  Second, images from the footage were
15 used in a Mountain Dew Booklet and the plaintiff "demonstrated a sufficient causal nexus through
16 evidence that the Mountain Dew booklet contained an advertisement featuring the infringing
17 material, that customers who ordered Times Expedition watches through the Mountain Dew
18 promotion would have seen the advertisement, and that Timex profited from the promotion." *Id.*
19 The court ultimately vacated the jury's award profits because the plaintiff failed to provide a
20 causal link as to "the overwhelming bulk of the indirect profits claim," *id.* at 713, but its
21 conclusions regarding the causal nexus to the Timex trade shows and Mountain Dew campaign
22 provide useful guidance.

23 Turning to the present case, Rearden's evidence of causal connection as to *Guardians of*
24 *the Galaxy* consists of (1) a draft press release for the movie, and (2) an online interview of Kevin
25 Feige, the president of Marvel Studios.  The press release does refer to the technology at issue –
26 Marvel refers to a "relatively new, hi-fidelity facial capture system called Mova," noting that
27 "[u]nlike traditional gridded methods, the Mova system makes use of UV reactive particulate in a
28 make up [sic] base to give us thousands of trackable points on the surface."  ECF No. 263-17 at 2.

But there is no evidence that this draft press release was ever released to the public, and the Court can only speculate that it had any effect on viewership or Defendant's gross revenues. "When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." *Polar Bear*, 384 F.3d at 711 (citation omitted). In the online interview, Feige highlights the importance of "[u]tilizing technology" for characters like the one called Thanos and explains that "the reason we were comfortable moving forward with seeing as much Thanos as we do in *Guardians* is because we had a great actor who was willing to put the dots on his face and do the performance." ECF No. 264-4 at 4. But even assuming generously that Feige's use of "the dots" was a reference to MOVA technology, "[t]here is no evidence showing that sales resulted from" the reference to MOVA in the interview. *Thale v. Apple Inc.*, No. C-11-03778-YGR, 2013 WL 3245170, at *8 (N.D. Cal. June 26, 2013); *see Polar Bear*, 384 F.3d at 715 ("Here, too many question marks remain between the promotional infringement, the purported enthusiasm generated among wholesalers and retailers by the advertising, the increased prices, and Timex's ultimate profits."); *Apulent, Ltd. v. Jewel Hosp., Inc.*, No. C14-637RSL, 2015 WL 630953, at *2 (W.D. Wash. Feb. 12, 2015) ("plaintiff's evidence is insufficient to support anything other than a guess whether any customer's decision to book the venue was influenced by the two photographs at issue in this action").

As evidence that Defendants promoted MOVA's use in *Deadpool*, Rearden relies on a 19-second excerpt from an 80-minute promotional featurette that "appeared on a Blu-ray, DVD, or stream of the film." ECF No. 301 at 9. The featurette describes the use of "a great system called 'MOVA,' which is a facial capture system. You paint on the face and it creates thousands and thousands of little tracking markers. At that point, you get a piece of geometry that captures movement and acting of the actor." ECF No. 264-2, Ex. 22. There is no evidence that the featurette was used to promote the movie; instead, it could be seen only by someone who had already purchased or rented the film. Rearden asserts a "likelihood that a purchaser of a Blu-ray, DVD, or stream may [have] view[ed] the featurette and be[en] motivated to see Deadpool again in a theater." ECF No. 301 at 9. But Rearden provides no evidence, expert or otherwise, that this ever happened or was likely to have happened. As stated above, a claim for indirect profits

5

requires more than mere speculation regarding causal nexus.  *Polar Bear*, 384 F.3d at 710.

The evidence regarding these two films stands in stark contrast to the evidence regarding *Beauty and the Beast*.  First, the *Beauty and the Beast* trailer included at least nine clips based on MOVA technology, and the trailer set a new record for views in the first 24 hours after release. ECF No. 263-4 at 18-19; ECF No. 263-9 at 18-19.  Rearden cited studies showing that film trailers are the top source of discovery of a film by moviegoers; that they are the most trusted source of information about a movie; that they are the primary source of information used by parents to determine if a movie is appropriate; and that trailer exposure correlates with theatrical attendance. ECF No. 263-4 at 18-19; ECF No. 263-18 at 54-55.  Rearden also provided deposition testimony and declarations, confirming that trailers motivate people to see a movie and substantiating the correlation between trailer views and box office gross revenue.  ECF No. 263-6 at 6; ECF No. 264-10 ¶¶ 10-11, 21, 28.  Rearden provides no similar evidence concerning causation for either *Guardians of the Galaxy* or *Deadpool*.

Rearden's alternative argument is that there is a triable issue of fact regarding causal nexus because the use of MOVA lowered Defendants' costs and thereby boosted profitability indirectly. ECF No. 301 at 6; *see Charter Sch. Capital, Inc. v. Charter Asset Mgmt. Fund, L.P.*, No. CV 14-3385-GW (PLAx), 2016 WL 5921062, at *3 (C.D. Cal. Apr. 1, 2016) ("A trier of fact could reasonably conclude that Defendants avoided increased costs – and therefore enjoyed increased profits, at least initially – because they were able to simply adopt the copyrighted language Plaintiff and its attorneys had prepared.").  To support this argument, Rearden cites the testimony of two expert witnesses.  First, Rearden cites the testimony of Defendants' expert, Dr. Hao Li, who stated that "[t]he main advantage of using high-resolution capture data over alternative animation techniques, such as physical simulation or keyframing, is that realistic and complex surface dynamics come for free."  ECF No. 263-21 at 3.  Rearden also cites a declaration from Dr. Angela Tinwell, in which she finds that hand animation is "significantly more labor intensive than dense motion capture technologies," and agrees "with Dr. Lee that even a window of three months would not provide sufficient time for artists using traditional techniques to produce CG animation of the same level of quality that high density facial performance capture technology such as

6

MOVA Contour inherently provides." ECF No. 264-16 ¶¶ 104, 107.

Defendants respond that a reduction in costs is not sufficient to establish causal nexus, because *Polar Bear* requires a showing of "*gross revenue* duly apportioned to relate to the infringement," *Polar Bear*, 384 F.3d at 711 (citation omitted) (emphasis added), which is not the same as a reduction in costs. ECF No. 302 at 5. The Court need not reach that question, however, because even if Rearden is correct that decreased costs are a proper substitute for increased gross revenue, Rearden has not shown that the use of MOVA actually decreased costs for *Guardians of the Galaxy* or *Deadpool*. The declarations Rearden cites merely establish that technology such as MOVA inherently provides a better-quality facial performance than traditional techniques. But they say nothing about the actual costs of using MOVA versus another technology, much less show that Defendants saved costs by using MOVA in either *Guardians of the Galaxy* or *Deadpool*. *See Mackie*, 296 F.3d at 915-16 ("a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement").

## CONCLUSION

For the foregoing reasons, the Court erred in denying summary judgment as to both *Guardians of the Galaxy* and *Deadpool*. Defendants' motions for reconsideration are therefore granted.

**IT IS SO ORDERED.**

Dated: June 8, 2022

_____
JON S. TIGAR
United States District Judge